IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**JOSE VILA-DEL CORRAL,**

Plaintiff,

v.

**D'ACCORD, INC., et al.,**

Defendants.

Civil No. 16-1229 (DRD)

## OPINION AND ORDER

Plaintiff Jose Vila-Del Corral, doing business as VDC Bros Manufacturers Representative, filed suit against D'Accord Inc., Evelio Gonzalez, Rafael Contreras, Jr., and D'Accord Shirt & Guayaberas, Inc. under Puerto Rico Act 21, 10 P.R. Laws §§ 279-279(h). *See* Docket No. 1. Pending before the Court is Defendants' *Motion to Dismiss* (Docket No. 8). For the reasons stated below, Defendants' motion is **DENIED**.

### I.   FACTUAL BACKGROUND[1]

On or around 1987, Plaintiff agreed to become Defendant D'Accord, Inc.'s ('D'Accord") exclusive sales representative in Puerto Rico.[2] In 2006, D'Accord's founder, Rafael Contreras-Soldevilla, passed away and control of D'Accord passed to his son, Defendant Rafael Contreras, Jr. ("Contreras Jr."), and Defendant Evelio Gonzalez ("Gonzalez"). Defendant D'Accord Shirts & Guayaberas, Inc. ("Shirts & Guayaberas") is D'Accord's successor in interest.

Plaintiff served as D'Accord Inc.'s sole representative in Puerto Rico for approximately twenty-nine years. Pursuant to his contract with D'Accord, Plaintiff did not undertake representation of any other

---

[1] The facts outlined below are neither exhaustive nor indicative of all the factual allegations set forth in the complaint. The facts, as outlined, simply relate to the arguments set forth in the pending motion to dismiss.
[2] D'Accord, Inc. specializes in manufacturing casual shirts and "guayaberas." It is unclear whether the agremeent was written or oral and whether it was later novated.

1

menswear brands that may have competed with D'Accord. Recently, Plaintiff received notice that Defendants D'Accord and Shirts & Guayaberas had sold their products in Puerto Rico without employing Plaintiff's services.

Plaintiff met with Defendants Contreras Jr. and Gonzalez in Miami to discuss the situation. Defendants informed Plaintiff that they did not recognize Plaintiff as D'Accord or Shirts & Guayabera's exclusive representative in Puerto Rico and that they did not recognize an $85,000 debt in unpaid commissions. To the date of the filing of the complaint, Defendants continued selling their products in Puerto Rican stores and through the internet to Puerto Rican customers without employing Plaintiff's services

## II.     PROCEDURAL HISTORY

On February 10, 2016, Plaintiff filed a complaint against D'Accord Inc., Evelio Gonzalez, Rafael Contreras, Jr., and D'Accord Shirt & Guayaberas, Inc. (collectively, "Defendants") under diversity jurisdiction, 28 U.S.C. §1331. Plaintiff alleged Defendants had violated Puerto Rico Act 21, 10 P.R. Laws §§ 279-279(h), which protects exclusive sales representatives in Puerto Rico from the unjust termination of their representation contracts. Plaintiff also made a vague request for injunctive relief, which the Court ordered Plaintiff to clarify. *See* Docket No. 6 (Court's Order to Plaintiff to provide a more definitive statement on his request for injunctive relief).

On March 1, 2017, Defendants filed a *Motion to Dismiss* under Federal Rule of Civil Procedure 12(b)(6) (Docket No. 8). Defendants' motion was brief and not well developed. Defendants' premised their prayer for dismissal solely upon Plaintiffs' failure to respond to the Court's order for a more definitive statement on Plaintiff's request for injunctive relief.

On that same date, Plaintiff filed a *Response in Opposition* to Defendant's motion (Docket No. 10). Plaintiff explained that his request was for the Court to issue a permanent injunction prohibiting Defendants

from violating the exclusive representation contract he had with D'Accord and Shirts & Guayaberas. Plaintiff then averred he had pled sufficient facts to support a plausible claim under Puerto Rico's Law 21 of 1990.

On March 7, 2016, Defendants filed a reply to Plaintiff's response (Docket No. 13). Defendants asseverated that Plaintiff has failed to plead the four factors to support a permanent injunction. Defendants also argued that issuing a permanent injunction would interfere with Defendants' rights to contract and with Congress' regulation of interstate commerce. Finally, Defendants alleged there are no contract documents to support Plaintiff's argument that he was D'Accord's exclusive sales agent in Puerto Rico.

## II. STANDARD OF REVIEW FOR MOTIONS TO DISMISS

Federal Rule of Civil Procedure 8(a) requires plaintiffs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007), a plaintiff must "provide the grounds of his entitlement [with] more than labels and conclusions." *See Ocasio-Hernandez v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) ("in order to 'show' an entitlement to relief a complaint must contain enough factual material 'to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).')(quoting *Twombly*, 550 U.S. at 555) (citation omitted).  Thus, a plaintiff must, and is now required to, present allegations that "nudge [his] claims across the line from conceivable to plausible" in order to comply with the requirements of Rule 8(a).  *Id.* at 570; *see e.g. Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

When considering a motion to dismiss, the Court's inquiry occurs in a two-step process under the current context-based "plausibility" standard established by *Twombly*, 550 U.S. 544, and *Iqbal*, 556 U.S. 662. "Context based" means that a Plaintiff must allege sufficient facts that comply with the basic elements of the cause of action. *See Iqbal*, 556 U.S. at 677-679 (concluding that plaintiff's complaint was factually insufficient to substantiate the required elements of a *Bivens* claim, leaving the complaint with only conclusory statements).  First, the Court must "accept as true all of the allegations contained in a complaint[,]" discarding

legal conclusions, conclusory statements and factually threadbare recitals of the elements of a cause of action. *Iqbal*, 556 U.S. at 678. "Yet we need not accept as true legal conclusions from the complaint or 'naked assertion[s]' devoid of 'further factual enhancement.'" *Maldonado v. Fontanes*, 568 F.3d 263, 268 (1st Cir. 2009) (quoting *Iqbal*, 556 U.S. 678) (quoting *Twombly*, 550 U.S. at 557).

Under the second step of the inquiry, the Court must determine whether, based upon all assertions that were not discarded under the first step of the inquiry, the complaint "states a plausible claim for relief." *Iqbal*, 556 U.S. 679. This second step is "context-specific" and requires that the Court draw from its own "judicial experience and common sense" to decide whether a plaintiff has stated a claim upon which relief may be granted, or, conversely, whether dismissal under Rule 12(b)(6) is appropriate. *Id.*

Thus, "[i]n order to survive a motion to dismiss, [a] plaintiff must allege sufficient facts to show that he has a plausible entitlement to relief." *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 41 (1st Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Furthermore, such inferences must be at least as plausible as any "obvious alternative explanation." *Id.* at 679-80 (citing *Twombly*, 550 U.S. at 567). "A plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." *Ocasio-Hernandez*, 640 F.3d at 12, (citing *Iqbal*, 556 U.S. 679).

The First Circuit has cautioned against equating plausibility with an analysis of the likely success on the merits, affirming that the plausibility standard assumes "pleaded facts to be true and read in a plaintiff's favor" "even if seemingly incredible." *Sepúlveda-Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 30 (1st Cir. 2010) (citing *Twombly*, 550 U.S. at 556); *Ocasio-Hernandez*, 640 F.3d at 12 (citing *Iqbal*, 556 U.S. 679); *see Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely.")(internal quotation marks omitted); *see Ocasio-Hernandez*, 640 F.3d at 12 (citing *Twombly*, 550 U.S. at 556)("[T]he court may not disregard properly pled factual allegations, 'even if it strikes

4

a savvy judge that actual proof of those facts is improbable.'"). Instead, the First Circuit has emphasized that "[t]he make-or-break standard . . . is that the combined allegations, taken as true, must state a plausible, [but] not a merely conceivable, case for relief." *Sepúlveda-Villarini*, 628 F.3d at 29. Additionally, a district court may not weigh evidence in deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See Massachusetts Delivery Ass'n v. Coakley*, 671 F.3d 33, 39 n. 6 (2012)(emphasizing that a primary difference between a motion to dismiss under Rule 12(b)(1) and Rule 12(b)(6) is that, under Rule 12(b)(1), a court may weigh the evidence and make factual determinations).

However, a complaint that rests on "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" will likely not survive a motion to dismiss. *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996). Similarly, unadorned factual assertions as to the elements of the cause of action are inadequate as well. *Penalbert-Rosa v. Fortuno-Burset*, 631 F.3d 592 (1st Cir. 2011). "Specific information, even if not in the form of admissible evidence, would likely be enough at [the motion to dismiss] stage; pure speculation is not." *Id.* at 596; *see Iqbal*, 556 U.S. at 681("To be clear, we do not reject [] bald allegations on the ground that they are unrealistic or nonsensical. . . . It is the conclusory nature of [the] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); *see Mendez Internet Mgmt. Servs. v. Banco Santander de P.R.*, 621 F.3d 10, 14 (1st Cir. 2010) (The *Twombly* and *Iqbal* standards require District Courts to "screen[] out rhetoric masquerading as litigation."). However, merely parroting the elements of a cause of action is insufficient. *Ocasio-Hernandez*, 640 F.3d at 12 (citing *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 49 (1st Cir. 2009)).

The First Circuit recently outlined two considerations for district courts to note when analyzing a motion to dismiss. *García-Catalán v. United States*, 734 F.3d 100, 104 (1st Cir. 2013). First, a complaint modeled on Form 11 of the Appendix of the Federal Rules of Civil Procedure which contains sufficient facts to make the claim plausible is ordinarily enough to surpass the standard prescribed under *Twombly-Iqbal*. *Id.* at 104. Second, district courts should accord "some latitude" in cases where "[a] material part of the

5

information needed is likely to be within the defendant's control." *Id.* (more latitude is appropriate in cases where "it cannot reasonably be expected that the [plaintiff], without the benefit of discovery, would have any information about" the event that gave rise to the alleged injury.)(internal citations and quotations omitted).

### III.     LEGAL ANALYSIS

#### *Permanent Injunction*

There are three basic types of injunctions in federal law: a temporary restraining order, a preliminary injunction, and a permanent injunction. *See* 11A C. Wright & A. Miller, Federal Practice and Procedure § 2941, p. 33 (3d ed.2013); *see also* Fed.R.Civ.P. 65. The distinctions between the three are matters for another day, however, as Plaintiff's requests are limited to the most severe of the three.

Four factors must be satisfied before a Court may unleash the full force of a permanent injunction:

> (1) plaintiffs prevail on the merits; (2) plaintiffs would suffer irreparable injury in the absence of injunctive relief; (3) the harm to plaintiffs would outweigh the harm the defendant would suffer from the imposition of an injunction; and (4) the public interest would not be adversely affected by an injunction.

*Asociacion de Educacion Privada de Puerto Rico, Inc. v. Garcia–Padilla,* 490 F.3d 1, 8 (1st Cir.2007).

The Court need look no further than the first of the four requirements to find that adjudicating the propriety of such a remedy is impossible at such an early stage of the lawsuit. At the pleading stage, it is impossible for Plaintiff to have *prevailed on the merits* because the instant case is only just beginning. This fact requires a denial of Defendants' entreaty to dismiss these claims.

#### *Act 21*

Defendants challenge the sufficiency of Plaintiff's claim under Puerto Rico's Act 21. The Puerto Rico Legislature enacted Act 21, otherwise known as the "Puerto Rico Sales Representative Act," in 1990 "to protect sales representatives from the unjust termination of their contracts." *IOM Corp. v. Brown Forman Corp.*, 627 F.3d 440, 445–46 (1st Cir. 2010)(citing P.R. Laws Ann. tit. 10, §§ 279–279h and *Orba Inc. v. MBR*

*Industries, Inc.,* 49 F.Supp.2d 67, 71 (D.P.R.1999)). Under the Act, principals may only terminate relationships with their exclusive sales representatives for just cause. *See id*.

"Law 21 defines a sales representative as 'an independent entrepreneur who establishes a sales representation contract of an exclusive nature, with a principal or grantor, and who is assigned a specific territory or market, within the Commonwealth of Puerto Rico.'" *Re-Ace, Inc. v. Wheeled Coach Indus., Inc.*, 363 F.3d 51, 57 (1st Cir. 2004). To state a claim under Act 21 as a representative, Plaintiff must prove he:

> (1) exclusively promotes and processes contracts on behalf of a principal in an ongoing, stable manner; (2) operates in a defined territory or market; (3) is responsible for creating or expanding the market for the principal's products through promotional efforts; (4) receives commissions for his services or a pay previously agreed upon by the parties; and (5) operates as an independent merchant.

*Brown Forman* at 445-446 (quoting *Cruz–Marcano v. Sánchez–Tarazona,* 172 D.P.R. 526, 548–49 (2007)). However, at this stage, the Court lacks sufficient information to make a conclusive determination on the aforementioned prongs. *See Triangle Trading Co. v. Robroy Indus.*, 952 F. Supp. 75 (D.P.R. 1997)(Providing that determinations of whether a person is a dealer or exclusive sales representative is fact-intensive and should not be made on the pleadings).

Plaintiff charges that he has been the exclusive agent for D'Accord in Puerto Rico since 1987. During that time, and until recently, Plaintiff was the only seller of D'Accord's products. It also appears that Plaintiff operated independently from D'Accord. Moreover, Plaintiff's pleadings support the inference that he actively marketed D'Accord's products to benefit his sales. In sum, Plaintiff has made a satisfactory showing of a plausible Act 21 claim, which the Courts deems sufficient to level up and proceed to discovery. With the benefit of discovery, Plaintiff would be in a better position to develop his claims and, on the other hand, Defendants may be in a better position to further argue for dismissal of the instant case. *See García-Catalán*, 734 F.3d at 104 (more latitude is appropriate in cases where "it cannot reasonably be expected that the

[plaintiff], without the benefit of discovery, would have any information about" the event that gave rise to the alleged injury.).[3]

### IV. CONCLUSION

For the aforementioned reasons, Defendants' *Motion to Dismiss* is **DENIED**. Defendants may restate their arguments for dismissal upon the completion of discovery,

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 28th day of March, 2017.

s/ Daniel R. Dominguez

DANIEL R. DOMINGUEZ
U.S. DISTRICT JUDGE

---

[3] The Court is skeptical of whether or not Act 21 applies to Plaintiff's contract with Defendants, as the Act only covers contracts established after 1990 and Plaintiff has averred that his relationship with D'Accord, Inc. dates back to 1987. *See Re-Ace, Inc. v. Wheeled Coach Indus., Inc.*, 363 F.3d 51, 57–58 (1st Cir. 2004)("Law 21, however, applies only to sales representative contracts formed after December 5, 1990.")(internal citations omitted). Moreover, under Law 75 of 1964, 10 P.R. Laws § 278 et seq., a predecessor of Law 21, contracts that were established prior to the enactment of the law were similarly not subject to Law 75's protections. *See Warner Lambert Co. v. Tribunal Superior*, 1 P.R. Offic. Trans. 527 (1973). Without the contract documents, however, the Court lacks the requisite clarity to reach a properly-founded conclusion on this matter.